Bradley, J.
The burden was with the plaintiff upon the issue to show performance of his contract, and he did give evidence tending to prove that the apparatus furnished by him and put into the defendant’s salt block, was such as he undertook by his contract to provide, and that it would operate successfully in doing the work required of it. But on the contrary, the evidence on the part of the defendant was to the effect that it failed to work; and that the plaintiff having been given ample opportunity failed to give to it successful operation as he had undertaken to do.
The question whether or not the plaintiff had substantially performed his contract, was fairly submitted to the jury, and the jury found against him. It is *386 unnecessary here to refer specifically to the evidence upon that question of fact. It was sufficient to permit the conclusion reached by the jury and to support their verdict. The successful operation in view was the rating the salt from the grainers, and after suitable drainage to convey it to the storage bins, which was the final disposition of it preparatory for market. The defendant gave evidence of the condition of the salt raked out and taken to the bin by the plaintiff’s apparatus, to which objection arid exception were taken by the plaintiff. -
And it is contended that this evidence was incompetent for any purpose, because the liability of the defendant to pay, did not depend upon the absence of defect in the principle, or system of its operation, as that was understood and adopted by the defendant, and the plaintiff was in no sense responsible for the condition of the salt when deposited in the bins; which was dependent upon the character of the brine, and the process of production of the salt from it.
The evident purpose of the defendant, and the intention of the parties was to transfer the salt precipitated in the grainers, in the,heating process of its production to the bins in the proper condition for market, else the result in view would not be accomplished. It was therefore agreed that this work should be done “in a fair workmanlike manner,” and that payment should be made when the rakers and conveyors were finished and in “successful operation according to specifications.”
This was something more than a mere contract for service on the part of the plaintiff. He was the projector and inventor of the apparatus. And he undertook to supply by it the requirement for the work it was designed to perform in the business of the defendant’s works.
It is true he had submitted his model, with the specifications, and had thus given the defendant information of the method and plan of its operation, but still it was one of the conditions that its operation should be successful, and it should do that which was required in a fair, workmanlike manner. It would seem to follow that if the character or quality of the salt was materially injured by the operation of the plaintiff’s apparatus its impaired condition, so far as attributable solely to that, may properly have been proven. And this was evidently the purpose of the evidence. One, and an important feature in the process of the transfer of the salt from the grainers to the storage bins, was_ suitable drainage from it of the bririe before the final deposit of the salt there.
This the parties understood. And the process was to rake the salt from each of the grainers up, and on to an inclined plane, and permit it to remain there until the brine had *387 escaped from it, and ran back into the grainer before pushing it forward into the conveyors, and its transmission into the bins.
The rakers of this apparatus brought the salt up this inclined surface, and the design was that each one should there deposit it for such drainage, and that the succeeding one should, in making its deposit, also shove the preceding-deposit into the conveyor, and be taken by means of operating buckets to the bins.
There was evidence tending to prove that the operation of this machinery was defective in its process, in that it. did not permit the requisite drainage, but that the salt permeated with the brine was carried directly into the conveyors, and by the action upon it of the buckets in the process of taking it forward to the bins, the salt was pulverized, its grain destroyed or impaired, and going into the bin in that condition, so saturated with brine, it became, when dry, a hardened mass unfit for market, and that this was wholly attributable to the defective operation of the plaintiff’s apparatus. This relation of the effect to such cause would seem to render competent the evidence given of the condition of the salt when finally so deposited in the bins, for the consideration of the jury in the event that they found the facts with the defense in respect to the alleged cause of such condition, and upon the question whether the operation of the apparatus came within the requirement of the contract. The chains by which the rakes were operated were in the brine of the grainers, and some evidence was given of the effect of the brine upon them, and tended to prove that it produced corrosion.
The plaintiff took exception to this evidence also. While that fact had but little, if any, importance upon the main question, as it must have been understood by the defendant when the contract was made that these chains would be operated in that place and manner, yet it cannot be said that the evidence was incompetent for it may have been contemplated that the metal would be so prepared as to prevent any material impairment of the chains by their contact with the saline solution. The contract provided that they should be made of the best bronze or gun metal.
The evidence was descriptive of that portion of the apparatus and its situation. And that of the plaintiff was that the chains were not corroded. There was no evidence to fairly justify any inference that any injurious effect resulted to the salt from the character of the chains. The opinion of a witness to the effect that they dissolved the salt, was promptly stricken out, nor did such evidence appear to have been received upon any ruling of the court allowing its admission.
*388 There was some evidence that the salt was somewhat discolored, but none to the effect that this condition was chargeable to the operation of the apparatus, unless the imperfect execution of its work, which permitted some of the salt to escape from the trough in which it was to be carried and go on to the floor. This was one of the defects claimed by the defendant to exist. And the evidence on the part of the defense tends to prove that the plaintiff was permitted, and given ample time to repair and improve his apparatus, to obviate if he could the defective operation complained of ; and that because he did not do so, it was removed from the works by the defendant after this action was commenced. Upon this question of its operation, the manner it did its work, and the opportunity to repair and perfect its operation, there was some conflict of evidence, which presented for the jury a question of fact. And we cannot say that their finding was against the weight of the evidence, so as to permit interference with their verdict.
We have carefully examined all the exceptions taken on the trial, and think no error was committed by the trial court.
The judgment and order should be affirmed.
Haight and Childs, JJ., concur.